Paul Murphy MA.IS.
8232 SVRB
Saipan, MP, 96950
(670) 484-6136
paul.murphy.officialmail@gmail.com
Paul Murphy, PRO SE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| Paul Murphy<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY IGLECIAS MACARANAS, in his official capacity as Commissioner of the Department of Public Safety of the COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (CNMI),<br><br>Defendant. | Case No.: 1-24-cv-00017<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

DATED: 1/27/25

_____
Paul Murphy
Pro Se

Anthony I. Macaranas
2/5/2025  to K527 th.

Plaintiff, Paul Murphy, Pro Se, for his Complaint against Defendant ANTHONY IGLECIAS MACARANAS, in his official capacity as Commissioner of the Department of Public Safety of the Commonwealth of the Northern Mariana Islands (CNMI), make the following allegation.

## INTRODUCTION AND SUMMARY OF CLAIM

1. On August 9, 2023, the former Commissioner of DPS CLEMENT R. BERMUDES denied my request for firearm possession of a Maxim Defense PDX-SD pistol chambered in 5.56 NATO with a built in "soup can" suppressor. On June 24, 2024, Commissioner of DPS ANTHONY IGLECIAS MACARANAS denied my request for possession of a Banish 30 suppressor and denied my request for possession of Ruger MKIV-SD Integral Suppressor 22 caliber pistol.

2. This is an action pursuant to 42 U.S.C. § 1983 for deprivation of civil rights under color of law, which seeks declaratory and injunctive relief challenging the CNMI's Weapons Control Act and CNMI's SAFE Act. Specifically, the law states in 6 CMC § 2222(a): "It shall be unlawful for any person to knowingly manufacture, import, sell, ship, deliver, possess, transfer, or receive a firearm silencer, except as authorized by law." The law states in PL 19-42 §208(a)(2) "No person shall possess: A silencer, sound suppressor or sound moderator;".

3. In, 1975, the United States and the CNMI entered the Covenant to Establish a Commonwealth of the Northern Marianas Islands in Political Union with The United States of America ("Covenant") that the CNMI would have Commonwealth status, which was signed into law by the U.S. Congress in 1976 and fully implemented in November 1986. Pursuant to Section 501(a) of the Covenant, in reference to Section 1 of the Fourteenth Amendment to the United States Constitution the Second Amendment is applicable to the CNMI.

4. The Second Amendment reads, "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." "In District of Columbia v. Heller, 554 U. S. 570, and McDonald v. Chicago, 561 U. S. 742, the Court held that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense. Under Heller, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct, and to justify a firearm regulation the

government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation. Pp. 8–22." New York State Rifle & Pistol Association, Inc. v. Bruen (2022).

## JURISDICTION AND VENUE

5. Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the CNMI of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress. This action satisfies the threshold requirement imposed by Article III of the Constitution alleging an actual case or controversy. This action seeks relief pursuant to 28 U.S.C. §§ 2201-2202 and 42 U.S.C. §§ 1981(a), 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

## PLAINTIFF

6. Plaintiff, Paul Murphy is a resident of Saipan, CNMI, and is a U.S. national and citizen. He is a United States Army veteran who served in the Global War on Terror and was honorably discharged. He is a professional educator working onsite at Kagman High School and online with the Office of Instructional Technology & Distance Education.

## DEFENDANT

7. Defendant, ANTHONY IGLECIAS MACARANAS, in his official capacity as Commissioner of the Department of Public Safety of the CNMI, is responsible for enforcing the CNMI's laws, customs, practices, and policies. In that capacity, Commissioner MACARANAS presently enforces laws, customs, practices, and policies complained of in this action, and is sued in his official capacity. Specifically, Commissioner MACARANAS is the authority charged with enforcing the provisions contained within the CNMI Weapons Control Act and SAFE Acts.

## GENERAL ALLEGATION

8. Plaintiff has been denied the right to purchase, own, and/or possess a pistol, silencer, sound suppressor, or sound moderator. On August 9, 2023, the former Commissioner of DPS CLEMENT R. BERMUDES sent me a document via email denying my request for firearm possession of a Maxim Defense PDX-SD pistol chambered in 5.56 NATO with a built in "soup can" suppressor. On

1 | June 24, 2024, Commissioner of DPS ANTHONY IGLECIAS MACARANAS send me documents
2 | denying my request for possession of a Banish 30 suppressor and denying my request for possession
3 | of Ruger MKIV-SD Integral Suppressor 22 caliber pistol. "The Court has held that "the Second
4 | Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that
5 | were not in existence at the time of the founding," District of Columbia v. Heller, 554 U. S. 570,
6 | 582 (2008). "As the per curiam opinion recognizes, this is a conjunctive test: A weapon may not be
7 | banned unless it is both dangerous and unusual." Caetano v. Massachusetts, 577 U.S. 8 (2016). In
8 | Murphy v. CNMI 1:14-CV-00026, Pp. 53-54 (2016) "… the Court declares that the following
9 | provisions of the Commonwealth Code, as described, unconstitutionally violate the individual right
10 | to armed self-defense, in violation of the Second and Fourteenth Amendments to the United States
11 | Constitution, made applicable in the CNMI by the Covenant:

> 6 CMC § 10101(e)(1)(i), to the extent that it defines "assault weapon" to include a
> semiautomatic rifle in a caliber greater than .223 that has the capacity to accept a
> detachable magazine and any one of the following:
> a. a pistol grip under the action of the weapon;
> b. a thumbhole stock;
> c. a folding or telescoping stock;
> d. a flare launcher;
> e. a flash suppressor; and
> f. a forward pistol grip;"

In previous litigation this court found that provisions which banned these instruments to include a flash suppressor were unconstitutional. With over three million silencers, suppressors, and sound moderators owned by Americans this is in common use for lawful purposes. The total ban on this class of arms should fail constitutional muster.

9. The Challenged Provisions carry felony criminal penalties for violations including fines and incarcerations of up to $25,000 and ten years in prison.

## STATUTORY BACKGROUND

10. In the CNMI, there exists the Commonwealth Weapons Control Act (6 CMC §§ 2201-2230). Section 2202(a) states: "It shall be unlawful for any person to knowingly manufacture, import, sell, ship, deliver, possess, transfer, or receive a firearm silencer, except as authorized by law." There also exists PL 19-42 commonly referred to as the SAFE Act. In §208(a)(2) it states: "No person shall possess: A silencer, sound suppressor or sound moderator;".

## COUNT I – VIOLATION OF RIGHT TO KEEP AND BEAR ARMS
## (U.S. CONST. AMENDS. II AND XIV; 42 U.S.C. § 1983)

11. There is an actual and present controversy between the parties. The above paragraphs are realleged and incorporated herein. The ban on silencers, sound suppressors, or sound moderators on its face and as applied, violates the Plaintiff's individual right to keep and bear arms as secured by the Second Amendment to the United States Constitution.

12. "The Court has held that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," District of Columbia v. Heller, 554 U. S. 570, 582 (2008). "As the per curiam opinion recognizes, this is a conjunctive test: A weapon may not be banned unless it is both dangerous and unusual." Caetano v. Massachusetts, 577 U.S. 8 (2016).

13. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." Heller, 554 U.S., at 634–635. The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates or postdates either time may not illuminate the scope of the right. With these principles in mind, the Court concludes that respondents have failed to meet their burden to identify an American tradition justifying New York's proper-cause requirement. Pp. 24–62." New York State Rifle & Pistol Association, Inc. v. Bruen 4 (2022).

14. "(a) In District of Columbia v. Heller, 554 U. S. 570, and McDonald v. Chicago, 561 U. S. 742, the Court held that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense. Under Heller, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct, and to justify a firearm regulation the government must demonstrate that the regulation is consistent with the Nation's

historical tradition of firearm regulation. Pp. 8–22. (1) Since Heller and McDonald, the Courts of Appeals have developed a "two-step" framework for analyzing Second Amendment challenges that combines history with means-end scrutiny. The Court rejects that two-part approach as having one step too many. Step one is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history. But Heller and McDonald do not support a second step that applies means-end scrutiny in the Second Amendment context. Heller's methodology centered on constitutional text and history. It did not invoke any means-end test such as strict or intermediate scrutiny, and it expressly rejected any interest-balancing inquiry akin to intermediate scrutiny. Pp. 9–15." New York State Rifle & Pistol Association, Inc. v. Bruen 2 (2022).

**FOR ALL COUNTS**

15. The above paragraphs are realleged and incorporated herein. There is an actual and present controversy between the parties as to whether the ban on silencers, sound suppressors, or sound moderators imposed in 6 CMC § 2222(a) and PL 19-42 §208(a)(2) are unconstitutional. A declaration from this Court would settle these issues. A declaration would also serve a useful purpose in clarifying legal issues in dispute. The Plaintiff seeks a declaration that the ban on silencers, suppressors, and sound moderators contained in 6 CMC § 2222(a) and PL 19-42 §208(a)(2) are unconstitutional. The Plaintiff seeks a permanent injunction on the Department of Public Safety Commissioner from enforcing provisions contained in 6 CMC § 2222(a) and PL 19-42 §208(a)(2).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court:

1. Enter a declaratory judgment under 6 CMC § 2222(a) and PL 19-42 §208(a)(2) are unconstitutional on their face because these sections violate the Second and Fourteenth Amendments to the United States Constitution.

2. Issue a permanent injunction enjoining Defendant DPS Commissioner ANTHONY IGLECIAS MACARANAS from enforcing against the Plaintiff: (a) the ban on silencers,

1  sound suppressors, or sound moderators. Grant such other and further relief, in law and
2  equity, as the Court deems just and proper.

3
4  Dated: 1/27/25          Respectfully submitted by:   *[signature]*
5                                                       Paul Murphy, PRO SE

- 7 -
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**