2026 WL 1587553
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

UNITED STATES of America, Plaintiff - Appellee,

v.

Joao Ricardo DEBORBA, Defendant - Appellant.

No. 24-3304
|
Argued and Submitted December
2, 2025 Portland, Oregon
|
Filed June 3, 2026

**Synopsis**
**Background:** Following the denial of defendant's motion to dismiss the indictment, 713 F.Supp.3d 1042, defendant, a noncitizen, was convicted via a stipulated-facts bench trial in the United States District Court for the Western District of Washington, David G. Estudillo, J., of unlawful possession of firearms and ammunition by a noncitizen unlawfully in the United States and as a person subject to a domestic violence restraining order, making false statements during the purchase of firearms, making a false claim to United States citizenship, and the unlawful possession of a firearm silencer. Defendant appealed.

**Holdings:** The Court of Appeals, McKeown, Circuit Judge, held that:

statute prohibiting possession of firearms and ammunition by a noncitizen unlawfully in United States did not facially violate the Second Amendment;

statute prohibiting possession of firearms and ammunition by a person subject to domestic violence restraining order did not violate the Second Amendment as applied to defendant;

National Firearms Act's (NFA) regulation of silencers was shall-issue licensing regime that did not violate Second Amendment right to bear arms;

that defendant stipulated to facts that rendered him guilty of charge of unlawfully possessing a firearm silencer precluded his as-applied vagueness challenge to NFA's definition of a silencer; and

NFA's definition of a silencer provided fair notice to defendant that his device fell within the Act's ambit.

Affirmed.

**Procedural Posture(s):** Appellate Review; Pre-Trial Hearing Motion.

Appeal from the United States District Court for the Western District of Washington David G. Estudillo, District Judge, Presiding, D.C. No. 3:22-cr-05139-DGE-1

**Attorneys and Law Firms**

William A. Glaser (argued), Attorney, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C.; Karyn Johnson, Jonas B. Lerman, Amanda M. McDowell, and Tania M. Culbertson, Assistant United States Attorneys; Teal L. Miller, Acting United States Attorney; Tessa M. Gorman, United States Attorney; Office of the United States Attorney, United States Department of Justice, Seattle, Washington; Max B. Shiner, Special Assistant United States Attorney, Office of the United States Attorney, United States Department of Justice, Tacoma, Washington; for Plaintiff-Appellee.

Rebecca C. Fish (argued), Trial Attorney; Alan Zarky, Attorney; Federal Public Defender's Office, Tacoma, Washington; for Defendant-Appellant.

Before: M. Margaret McKeown and Jennifer Sung, Circuit Judges, and Sidney A. Fitzwater, District Judge. [*]

OPINION

McKEOWN, Circuit Judge:

**\*2** Firearms, an unregistered silencer, lack of immigration status, and restraining orders collided in João Ricardo DeBorba's life and gave rise to the convictions he now challenges. DeBorba asks us to construe the Second Amendment so broadly that it would bowl over a number of criminal statutes. But DeBorba's actions put him outside the class of "ordinary, law-abiding citizen[s]" who enjoy Second Amendment rights. *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1, 9, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022). As for his challenge to the regulation of silencers under the National Firearms Act ("NFA"), binding precedent counsels

that silencers are not covered by the plain text of the Second Amendment, *Duncan v. Bonta*, 133 F.4th 852, 868 (9th Cir. 2025) (en banc), and that shall-issue regimes such as the NFA are constitutional, *Bruen*, 597 U.S. at 38 n.9, 142 S.Ct. 2111. Our decision today should be unsurprising: While the Second Amendment's right to keep and bear arms is among our nation's fundamental rights, its scope "is not unlimited" and does not allow any person "to keep and carry any weapon whatsoever in any manner whatsoever." *United States v. Rahimi*, 602 U.S. 680, 690–91, 144 S.Ct. 1889, 219 L.Ed.2d 351 (2024) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)). We affirm DeBorba's convictions.

## BACKGROUND

DeBorba entered the United States in 1999 and lived here for the next two decades, during which time he married, fathered four children, and settled in Washington. After his tourist visa expired in 2000, he never regained legal status to reside in the United States.

In February 2019, DeBorba successfully applied to the Washington State Department of Licensing for a concealed pistol license. On the application, he indicated he was a U.S. citizen. In April and May of that same year, DeBorba submitted forms to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to register handguns. On both forms, DeBorba checked that he was a U.S. citizen.

On November 12, 2019, a judge in Clark County, Washington issued a domestic violence no-contact order against DeBorba, with his estranged wife as the protected person. The order incorporated a finding that DeBorba "represent[ed] a credible threat to the physical safety of the protected person"; directed DeBorba to "not cause, attempt, or threaten to cause bodily injury to, assault, sexually assault, harass, stalk, or keep under surveillance the protected person"; and forbade DeBorba from owning or possessing any firearms.

Days later, on November 16, 2019, police arrested DeBorba for violating the restraining order after he repeatedly called and messaged his wife. From his apartment, officers collected nineteen firearms and ammunition, all belonging to DeBorba.

Additional domestic violence-related charges were filed against DeBorba on June 3, 2020, in response to which the Clark County court issued another pre-trial domestic violence no-contact order. Like the November 2019 order, the June 2020 order commanded surrender of all firearms. When DeBorba resolved his pending charges in October 2020, the court issued a post-conviction restraining order valid for two years.

More domestic-violence charges were filed against DeBorba in August 2021 and, alongside the charges, the Clark County court entered another pre-trial no-contact order. Once the charges were resolved in January 2022, the court issued a post-conviction no-contact order.

On May 6, 2022, law enforcement agents executed a federal search warrant at DeBorba's apartment and seized five firearms and ammunition. Inside a workbench in DeBorba's bedroom, the officers found—alongside ammunition, weapon modification tools, and other firearm accessories—a box hand-labeled with the words "Tick Suppressor," which contained what was later determined to be a silencer. In a safe inside DeBorba's bedroom, officers found his Brazilian birth certificate and Washington concealed carry permit. In a post-arrest interview, DeBorba told agents he was a citizen of Brazil, claimed ownership of the seized firearms, and admitted that he knew he was not supposed to possess firearms because of his immigration status and prior domestic violence convictions.

**\*3** DeBorba was indicted for unlawful possession of firearms and ammunition, 18 U.S.C. § 922(g)(5), (8); making false statements during purchase of firearms, 18 U.S.C. § 922(a)(6); a false claim to U.S. citizenship, 18 U.S.C. § 911; and unlawful possession of a firearm silencer under the NFA, 26 U.S.C. §§ 5861(d), 5845(a)(7). The district court denied his effort to dismiss the charges on Second Amendment, materiality, and vagueness grounds, which we review de novo. *United States v. Stennerson*, 150 F.4th 1276, 1280 (9th Cir. 2025). DeBorba was convicted via a stipulated-facts bench trial.

## ANALYSIS

DeBorba levies challenges to Section 922(g)(5)'s prohibition on firearm possession by noncitizens, the

materiality of his false statements and U.S. citizenship claim, Section 922(g)(5)'s prohibition on firearm possession by those subject to a domestic violence restraining order, and the NFA's regulation of silencers. None are availing. We address each in turn.

## I. Section 922(g)(5)'s Noncitizen Prohibitions

Our recent decision in *United States v. Vazquez-Ramirez* controls DeBorba's challenges to 18 U.S.C. § 922(g)(5). 163 F.4th 706 (9th Cir. 2026). We held in *Vazquez-Ramirez* that Section 922's prohibition on the possession of firearms and ammunition by noncitizens "illegally or unlawfully in the United States," 18 U.S.C. § 922(g)(5)(A), is "consistent with the nation's historical tradition of firearm regulation" as required by the Second Amendment. 163 F.4th at 709– 11.

DeBorba's facial challenge to Section 922(g)(5)'s constitutionality is precluded because he is unable to "establish that no set of circumstances exists under which the [law] would be valid." *Stennerson*, 150 F.4th at 1281 (alteration in original) (quoting *Rahimi*, 602 U.S. at 693, 144 S.Ct. 1889). DeBorba runs headlong into *Vazquez-Ramirez*'s clear holding: "the Second Amendment does not invalidate § 922(g)(5)(A)." 163 F.4th at 708. For "[f]rom the common law onward," those lacking legal status in the United States, like DeBorba, "have historically been disarmed unless and until they swore an oath of allegiance to the sovereign." *Id.* at 711 (alteration in original) (quoting *United States v. Carbajal-Flores*, 143 F.4th 877, 888 (7th Cir. 2025)). The law is accordingly "constitutional in some of its applications," and, indeed, is constitutional "as applied to the facts of [DeBorba's] own case." *Rahimi*, 602 U.S. at 693, 144 S.Ct. 1889.

## II. Materiality of the False Statements and Claim to Citizenship

DeBorba's materiality challenges to his convictions for making false statements on ATF gun purchase forms and making a false claim to citizenship on his Washington concealed carry application fail because his challenges to Section 922(g)(5) fail. DeBorba concedes that those challenges depend on a holding that the Second Amendment does not allow his disarmament based on citizenship or immigration status. That proposition is foreclosed by *Vazquez-Ramirez*.

## III. Section 922(g)(8)'s Restrictions on Individuals Under Domestic Violence Restraining Orders

DeBorba presents as-applied challenges to both prongs of Section 922(g)(8)(C). He argues that the restraining orders in his case lack analogous historical traditions of firearm regulation. In *United States v. VanDyke*, 157 F.4th 1082 (9th Cir. 2025), we drew upon the Supreme Court's rejection of a 922(g)(8)(C)(i) challenge in *Rahimi* and rejected a challenge to 922(g)(8)(C)(ii). Together, *Rahimi* and *VanDyke* foreclose DeBorba's arguments regarding Section 922(g)(8)(C)'s unconstitutionality, and he does not demonstrate that his circumstances are meaningfully different from those cases. [1]

**\*4** We turn first to Count 2, which arises from the November 2019 restraining order. Because that order contains a judicial credible-threat finding, it triggers Section 922(g)(8)(C)(i). The Supreme Court underscored in *Rahimi* that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." 602 U.S. at 700, 144 S.Ct. 1889. Although DeBorba admits that the November 2019 order contained a credible-threat finding, he attempts to distinguish his situation from that in *Rahimi* by arguing that the record lacks sufficient information about the bases upon which the Clark County court issued the order and by emphasizing that the order against him was based on domestic violence allegations and not, as in *Rahimi*, misuse of a firearm. But those factual distinctions make no analytical difference. The Clark County court expressly found that DeBorba represented a credible threat to his wife's physical safety. That finding brings this case squarely within the scope of *Rahimi*. *See id.* at 702, 144 S.Ct. 1889 ("An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.").

The logic of *VanDyke* applies with equal force to DeBorba's constitutional challenge to Count 1, his conviction under Section 922(g)(8)(C)(ii). Both the October 2020 and

January 2022 orders underlying Count 1 were entered after convictions. Upon entry of a conviction, Washington law "authorizes a court to issue a no-contact order to 'record[ ]' a no-contact condition it includes in the judgment and sentence." *Washington v. Granath*, 190 Wash.2d 548, 415 P.3d 1179, 1181 (2018) (alteration in original) (quoting RCW § 10.99.050(1)). That discretionary power granted to the sentencing court arises from "the intent of the [Washington] legislature that the official response to cases of domestic violence shall stress the enforcement of the laws to protect the victim." RCW § 10.99.010. Correspondingly, the Idaho law under which the challenged protective order in *VanDyke* arose "enable[d] the inference of a judicial determination of dangerousness," with its "primary purpose ... to protect the victims of domestic abuse by the offender." 157 F.4th at 1087 (citation omitted). The Washington legislature's decision to empower courts to protect victims from those convicted of certain domestic-violence crimes aligns with *VanDyke*'s recognition of historical traditions of both "individual disarmament based on a judicial determination of dangerousness" and "[c]ategorical disarmament" via "legislatively presumed danger" for certain groups of people. 157 F.4th at 1085, 1088 (first citing *Rahimi*, 602 U.S. at 695–700, 144 S.Ct. 1889; and then citing *United States v. Duarte*, 137 F.4th 743, 759 (9th Cir. 2025) (en banc)); *see also United States v. Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011) ("Congress enacted § 922(g)(8) in light of evidence that domestic violence presents a pervasive problem in American society."). Under both *Rahimi* and *VanDyke*, application of Section 922(g)(8)(C) to DeBorba is constitutional.

## IV. National Firearms Act's Silencer Regulations

DeBorba argues the NFA's regulation of silencers violates both the Second Amendment's right to bear arms and the Fifth Amendment's prohibition on vague criminal laws. Both challenges lack merit.

### A. Second Amendment Challenge

DeBorba facially challenges the NFA's silencer registration requirements under the argument that the Second Amendment protects the possession of silencers. His challenge doubly fails: Silencers are not "arms" covered by the Second Amendment's plain text, and the NFA is a shall-issue licensing

regime that DeBorba has failed to show is being put towards abusive ends.

Under *Bruen*, we undertake a threshold textual inquiry to determine if "the Second Amendment's plain text covers an individual's conduct." 597 U.S. at 17, 142 S.Ct. 2111. To determine if a "component or accessory" of a firearm is covered by the Second Amendment, we ask whether it "is necessary to the ordinary operation of the weapon." *Duncan*, 133 F.4th at 868. As we have previously explained, "optional accessories" to firearms—such as gun slings, scopes, and, importantly, silencers—fall outside of the Second Amendment's plain text because they are "accoutrements" and not arms. *Id.* DeBorba's challenge thus fails at step one of the *Bruen* analysis.

**\*5** DeBorba's challenge also cannot overcome the presumptive constitutionality of the NFA's shall-issue licensing regime. Footnote 9 in *Bruen* creates a presumption of constitutionality for permitting processes that "do not require applicants to show an atypical need for armed self-defense" and for which " 'narrow, objective, and definite standards' guid[e] licensing officials." 597 U.S. at 38 n.9, 142 S.Ct. 2111 (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)). The NFA is one such "shall-issue" scheme. Those wishing to possess a silencer must file a written application including their fingerprints and photograph and, once added to the National Firearms Registration and Transfer Record, register the silencer. 26 U.S.C. §§ 5812, 5841, 5845(a); *see also United States v. Bolatete*, 977 F.3d 1022, 1031 n.4 (11th Cir. 2020) (describing the NFA registration process).

Footnote 9's presumption excludes permitting schemes "put toward abusive ends," such as those schemes that include "lengthy wait times" to process applications or "exorbitant fees." 597 U.S. at 38 n.9, 142 S.Ct. 2111. DeBorba argues that the NFA requires a complex registration process but does not offer any evidence of applicants having problems completing the required forms, arbitrary disapprovals, or prolonged delays in processing. Nor does he show that other aspects of the NFA's licensing process are being abusively implemented. [2] That those who fail to comply face criminal penalties does not render the NFA's registration requirements

unconstitutional. *See* 🚩*Bolatete*, 977 F.3d at 1031 ("The National Firearms Act, and the criminal penalty for violating it, are grounded in Congress' power to tax."); *cf.* 🚩⚠️*Staples v. United States*, 511 U.S. 600, 616, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (citing the "potentially harsh penalty" for violating 🚩Section 5861(d) as evidence that violation of the NFA requires knowledge of the regulated firearm's relevant characteristics). [3]

Our conclusion that the NFA's regulation of silencers is a constitutional shall-issue licensing regime under 🚩*Bruen* aligns with the two sister circuits who have addressed the question. Both the Fourth and Fifth Circuits focused on 🚩*Bruen*'s footnote 9, held that the NFA's licensing regime was based on "objective" criteria, and found no evidence of the process being put towards abusive ends. *United States v. Speed*, 175 F.4th 272, 285–86 (4th Cir. 2026); *United States v. Peterson*, 161 F.4th 331, 339 (5th Cir. 2025) (quoting 🚩*Bruen*, 597 U.S. at 38 n.9, 142 S.Ct. 2111), *cert. denied*, No. 25-1076, —— U.S. ——, —— S.Ct. ——, --- L.Ed.2d ——, 2026 WL 1052030 (Apr. 20, 2026). As the Fifth Circuit explained, there is "no reason to doubt" that the NFA's licensing requirements serve to "ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' " *Peterson*, 161 F.4th at 339 (quoting 🚩*Bruen*, 597 U.S. at 38 n.9, 142 S.Ct. 2111). We agree and so hold.

### B. Vagueness Challenge

**\*6** DeBorba also argues that the NFA's regulation of "any silencer," 🚩26 U.S.C. § 5845(a)(7)—defined as "any device for silencing, muffling, or diminishing the report of a portable firearm," 🚩18 U.S.C. § 921(a)(25)—is unconstitutionally vague. He invokes the Fifth Amendment's protection against any "criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." 🚩*Johnson v. United States*, 576 U.S. 591, 595, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015).

The parties dispute whether DeBorba can present a facial vagueness challenge. The "general rule" is that "a defendant who cannot sustain an as-applied vagueness challenge to a statute cannot be the one to make a facial vagueness challenge to the statute." 🚩*Kashem v. Barr*, 941 F.3d 358,

375 (9th Cir. 2019). That prohibition is rooted in the Supreme Court's pronouncement that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." 🚩*Id.* (quoting 🚩⚠️*Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). As we recently explained in a Second Amendment case, "[s]tatutory vagueness challenges that 'do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' " 🚩*Stennerson*, 150 F.4th at 1286 (quoting 🚩*United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013)). We accordingly consider only DeBorba's as-applied challenge.

As applied, DeBorba's vagueness challenge to the NFA plainly fails for two reasons. First, the stipulated facts, taken together, render DeBorba guilty of the charge under 🚩Section 5861(d) and foreclose his challenge. *See generally* Ninth Circuit Model Criminal Jury Instruction 14.25 (rev. Sept. 2015) (laying out the crime's three elements). DeBorba admitted "that the item in the 'Tick Suppressor' box in his workbench is a 'firearm silencer' as defined in 🚩18 U.S.C. § 921(a)(25) and therefore a 'firearm' as defined in 🚩26 U.S.C. § 5845(a)(7), and that he did not register or lawfully acquire it under the National Firearms Act." DeBorba does not contest that the stipulation establishes that he knowingly possessed and had not registered the device.

DeBorba instead argues that he did not stipulate that "he personally knew the device would be deemed a 'silencer' " and thus require registration. But the crime does not require knowledge about whether the device would be deemed a silencer. For a conviction under the NFA, all that DeBorba had to know was that the device contained "the specific characteristics that made it a firearm within the Act." *United States v. Montoya-Gaxiola*, 796 F.3d 1118, 1122 (9th Cir. 2015). For an automatic rifle, that means knowing that the rifle fires more than one shot with a single pull of the trigger, 🚩⚠️*Staples*, 511 U.S. at 603, 619, 114 S.Ct. 1793, and for a sawed-off shotgun, that means knowing that the weapon was short enough to fall within the NFA's length parameters, 🚩*United States v. Summers*, 268 F.3d 683, 687–88 (9th Cir. 2001). For the silencer, DeBorba had to know that the device is "for silencing, muffling, or diminishing the report of a

portable firearm." 18 U.S.C. § 921(a)(25); *see Montoya-Gaxiola*, 796 F.3d at 1122; *accord Speed*, 175 F.4th at 282–83.

The "Tick Suppressor" label on the box containing the device, which was found among other guns and accessories, made clear the purpose for which the device was intended. This inference is strengthened by the fact that DeBorba is a gun enthusiast, with at least, per his stipulation, twenty-four guns, along with ammunition and accessories, seized from him. Combined, the stipulations leave no doubt that DeBorba knew "that what he possessed was a silencer," *United States v. Thompson*, 82 F.3d 849, 854 (9th Cir. 1996), and foreclose an as-applied vagueness challenge.

**\*7** Second, DeBorba's as-applied challenge falls short when one considers the device's design. As the district court explained, the item was "a cylindrical device with no manufacturer marking and no serial number" in which "the front endcap of the device contained a hole to allow passage of a bullet, and the rear endcap also had a hole in its center that was internally threaded to facilitate attachment to a firearm barrel." *United States v. DeBorba*, 713 F. Supp. 3d 1042, 1066 (W.D. Wash. 2024). When the ATF attached DeBorba's device to a portable firearm and fired the gun, the device "reduced sound reporting by at least twelve decibels." *Id.* The NFA's inclusion of any device "for silencing, muffling, or diminishing the report of a portable firearm," 18 U.S.C. § 921(a)(25), provided "fair notice" to DeBorba that his device falls within the Act's ambit. *Johnson*, 576 U.S. at 595, 135 S.Ct. 2551.

**AFFIRMED.**

**All Citations**

--- F.4th ----, 2026 WL 1587553

---

**Footnotes**

\*    The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

1    DeBorba does not dispute that the restraining orders meet the three parameters of 18 U.S.C. § 922(g)(8)(A)–(C).

2    While the NFA previously charged a $200 licensing fee to *transferors* of silencers, 26 U.S.C. § 5811 (2025), it is not clear that fees charged to firearm sellers, rather than to firearm purchasers, implicate a purchaser's Second Amendment rights. In any case, we agree with the government that the $200 fee is not exorbitant compared to the price of silencers, which the government represents can cost anywhere from $350 to $1,500.

And, most importantly, as of January 1, 2026, the $200 fee has been reduced to $0. *See* 26 U.S.C. § 5811(a)(2) (2026). Even if DeBorba's facial challenge to the NFA on exorbitant-fee grounds had previously held water, that challenge is now moot. *See Fikre v. FBI*, 904 F.3d 1033, 1038 (9th Cir. 2018) ("A statutory change ... is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." (quoting *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994))).

3    The Court in *Bruen* approvingly cited shall-issue concealed-carry licensing regimes in various states—including Nevada, Oregon, and Washington within our circuit—that carry criminal penalties for noncompliance. *Bruen*, 597 U.S. at 13 n.1, 142 S.Ct. 2111.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.